NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 28, 2014
Decided February 18, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 13-2074

| | |
|---|---|
| DAPHNE J. RONNING, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Western District of |
| | Wisconsin. |
| v. | |
| | No. 3:10-cv-00275 |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social | William M. Conley, |
| Security, | *Chief Judge.* |
| *Defendant-Appellee*. | |

**O R D E R**

Daphne Ronning, a 46-year-old former restaurant cook who suffers from a chronic pain condition, appeals the district court's judgment upholding the denial of her application for disability insurance benefits and supplemental security income. She argues that the administrative law judge did not properly follow the directives set forth in Social Security Ruling 03–2p, which explains how claims involving her reflex sympathetic dystrophy syndrome (RSDS) should be evaluated. She also argues that the

ALJ wrongly discredited her testimony. We affirm.

Ronning hurt her left hand in August 2003, when she slipped and fell in the Hardee's restaurant she was managing. She sought treatment at an emergency room, where she was diagnosed with a sprain in her left index, middle, ring, and small fingers. Less than a month later, an orthopedic surgeon examined Ronning, found "marked limitation" in the range of motion in her left hand's fingers, and opined that she likely had RSDS (also known as complex regional pain disorder) in that hand as a result of her injury. RSDS is a condition that involves "diffuse persistent pain" and "frequently follows some local injury"; it "is often associated with vasomotor disturbances, trophic changes, and limitation or immobility of joints." STEDMAN'S MEDICAL DICTIONARY 1895 (28th ed. 2006). Over the next four months, two other treating orthopedists concurred that Ronning had RSDS.

The month after she was injured, Ronning returned to her job with the restriction that she not use her left hand. Some unspecified time later, she was fired (for being tardy and forgetful, she says—side effects that she attributes to medications she was taking to treat her injury). In spring 2004 she found work as a prep cook at another restaurant, the Longbranch, but was let go because she could not do her work without the use of her left hand. She applied for Social Security benefits, alleging an onset disability date of December 26, 2004—the day she lost her job at the Longbranch—and that she was disabled because of depression and her inability to use her left hand.

Ronning underwent more intensive treatment for her RSDS in early 2005. Her treating orthopedist examined her in March, opined that she could work as long as she did not use her left hand, and referred her to a pain clinic and an occupational therapist. She received a left stellate ganglion block (an injection of local anesthetic) at a pain clinic in May, after which she reported a 25% reduction in pain intensity in her left arm. Soon after, she returned to her orthopedist who noted that the stellate block, combined with occupational therapy, had improved her RSDS. She attended several occupational-therapy sessions, which helped increase the range of motion in her left hand, but insurance problems (as reported by her orthopedist) prevented her from receiving additional treatment, including a second stellate block.

In connection with her application for benefits, Ronning underwent various physical evaluations in late 2006. One state-examining internist found that her left hand had severely decreased grip, mild swelling, and loss of motion and that RSDS was an appropriate diagnosis. He noted, however, that her left wrist, elbow, and shoulder were

unaffected by her hand condition. A consulting physician assessed Ronning's Physical Residual Functional Capacity and opined that she could lift and carry 20 pounds occasionally and 10 pounds frequently, stand and sit for 6 hours in an 8-hour workday, and push and pull without limitation; she could not, however, use her left hand for "handling" or "fingering" (since her RSDS left her without functional use of the hand), and she had no postural, visual, communicative, or environmental limitations. In a form labeled "Psychiatric Review Technique," a consulting psychologist concluded based on the Affective-Disorders category that Ronning did not have any medically determinable impairment.

The Social Security Administration denied Ronning's application for benefits in November 2006 and in May 2007 upheld the decision on reconsideration.

Since Ronning was also trying to obtain worker's compensation benefits, two orthopedic surgeons consulting for the state worker's compensation board examined her in February and May 2008 and opined that she could work with limitations. One of the surgeons believed that she no longer needed further treatment and could work—with permanent restrictions (lifting no more than five pounds with her left hand and refraining from repetitive motions with that hand). The other believed that her RSDS had been "incompletely treated" but that the optimum period for a good result "had long passed"; he believed that she could return to work with the permanent limitation that she perform only light duty without using her left hand.

At her hearing in July 2008 before an ALJ, Ronning testified about her physical limitations. According to Ronning, her medications affected her memory and made her dizzy, requiring her to sit down. She said that muscle spasms made her left hand "constantly sore," and that having to hold the hand in a protective mode left her left shoulder "really sore."

A vocational expert testified that a hypothetical claimant of Ronning's age with a limited education and left-hand RSDS who was limited to light work with no use of her left hand or upper extremity would not be able to perform her past work as a cook, but that she could work as a hostess, furniture-rental consultant, or surveillance-system monitor. The VE opined further that such a claimant who needed to miss more than three days of work per month and who could not concentrate or work persistently throughout a two-hour period—thus requiring extra work breaks—would not be competitively employable in those jobs.

The ALJ applied the five–step evaluation process and denied Ronning's application for benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ concluded that Ronning had not worked since her alleged onset date (step 1); her RSDS was a severe impairment (but she did not have a mental impairment) (step 2); her impairment did not meet or equal a listed impairment (step 3); she was unable to perform her past relevant work as a cook, but had the residual functional capacity to perform light work without the use of her left hand or left upper extremity (step 4); and suitable jobs were available, including work as a hostess and furniture-rental consultant (step 5). In addressing step 4, the ALJ discredited Ronning's statements about her physical symptoms, pointing out that her treating physicians had released her to work and that no physician had opined that she could not work. The ALJ further questioned her credibility by noting that no medical evidence corroborated her complaints that her shoulder was sore or that she suffered side effects from her medications.

After the Appeals Council denied her request for review, Ronning sued in federal court. She argued that the ALJ should have considered at step 3 whether her condition met or equaled other listings, noting that Social Security Ruling 03–2p requires the ALJ to consider "psychological manifestations" of RSDS under the mental-disorders listings. In particular she argued that the ALJ should have considered whether her condition met or equaled Listing 12.07 for somatoform disorders, "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.07. She also argued that the ALJ erred by discrediting her testimony regarding her limitations (difficulty concentrating because of pain and side effects from medications).

The district court upheld the ALJ's decision. The court determined that the ALJ need not have considered whether Ronning's condition met or equaled a listing for mental disorders because the record contained no evidence that she was diagnosed with or treated for depression or that she had any other psychological impairment such as a somatoform disorder. The court also found that the ALJ gave specific reasons supported by the record to discredit her testimony, including the absence of any complaints from her to physicians about shoulder pain or medicines' side effects and the absence of any physicians' reports opining that she could not work.

Ronning now contends that the ALJ erred at step 3 in finding that her RSDS did not meet or equal a listed impairment. Acknowledging that RSDS is not a listed impairment, she relies on SSR 03–2p to argue that the ALJ should have compared her symptoms to a somatoform disorder. Under SSR 03–2p if an ALJ determines that a

claimant's RSDS is a severe impairment, the ALJ must then compare the "specific findings . . . to any pertinent listing to determine whether medical equivalence may exist." 2003 WL 22399117, at *6. The ruling further directs an ALJ to evaluate "[p]sychological manifestations related to RSDS under the mental disorders listings, and [determine] whether the individual's impairment(s) meets or equals the severity of a mental listing." *Id.* Ronning equates her RSDS symptoms with a somatoform disorder because her RSDS entails "symptoms that seem out of place with the objective signs of injury."

But the ALJ did not have to compare Ronning's RSDS to a somatoform disorder because nothing in the record suggests that she had a somatoform disorder. RSDS, according to SSR 03–2p, is "a constellation of symptoms and signs that may occur following an injury to bone or soft tissue" and are not "imaginary or etiologically linked to psychiatric disease." 2003 WL 22399117, at *1, 3. Whatever physical symptoms she had, all her treating and examining physicians agreed, resulted from RSDS caused by her hand injury. Indeed, according to her orthopedist, non-psychiatric treatment—including a stellate ganglion block and occupational therapy—helped alleviate her pain and improve the range of motion in her injured hand. Because she did not present any evidence that her symptoms resulted from a somatoform disorder, the ALJ did not err by not considering her impairment under the somatoform-disorders listing. *See Scheck v. Barnhart*, 357 F.3d 697, 700–01 (7th Cir. 2004) (ALJ need not explain why impairment did not meet or equal listings where there was "no evidence" that impairment met or equaled a listing).

Ronning next argues that the ALJ's credibility determination was flawed because the ALJ used "boilerplate" that we have repeatedly criticized: "[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *See Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *Bjornson v. Astrue*, 671 F.3d 640, 644–46 (7th Cir. 2012); *Martinez v. Astrue*, 630 F.3d 693, 694 (7th Cir. 2011); *Parker v. Astrue,* 597 F.3d 920, 921–22 (7th Cir. 2010). But we will uphold the ALJ's credibility determination if the ALJ provided specific reasons for discrediting the claimant's testimony. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). The ALJ here discredited Ronning's testimony for a number of reasons, including the absence of any medical findings or treatment reflecting that she suffered shoulder pain and side effects from her medications. *See Bradley v. Astrue,* 528 F.3d 1113, 1115 (8th Cir. 2008). The ALJ also properly credited the uncontradicted opinions of Ronning's treating orthopedists that she could work

with certain restrictions. *See* SSR 03–2p, 2003 WL 22399117, at *5; 20 C.F.R. § 404.1527(d)(2)–(3); *Roddy v. Astrue,* 705 F.3d 631, 638 (7th Cir. 2013); *Bjornson,* 671 F.3d at 647–48.

Accordingly, we AFFIRM the district court's judgment.