**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 7, 2018
Decided August 13, 2018

**Before**

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-1109

| | |
|---|---|
| BARBARA S. RICHARDS, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Indiana, Fort Wayne Division. |
| *v.* | No. 1:17-CV-37-TLS |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, *Defendant-Appellee*. | Theresa L. Springmann, *Chief Judge*. |

## O R D E R

An administrative law judge denied Barbara Richards's applications for disability insurance benefits and supplemental security income after finding that, although she suffers from several impairments, she was not credible about her limitations and still could perform a limited range of sedentary work. Because Richards waived or failed to develop any tenable argument that the ALJ's decision was not supported by substantial evidence, we uphold the denial of benefits.

Barbara Richards, a 50-year-old woman from Northeastern Indiana, reapplied for supplemental security income and disability insurance benefits in 2013 after a prior

application was denied in 2010. She alleged disability based on mental impairments—including depression, PTSD, and anxiety disorder—and physical ones—including pain and disc disorders in her back and neck, pain and numbness in her extremities, headaches, and carpal tunnel syndrome. These impairments had forced her to quit her job at a nursing home in 2010. She tried to work several times after that but was unable to keep her jobs because she was in too much pain. She did babysit some of her friends' children between 2011 and 2012.

Richards's primary care doctor referred her to the Northeastern Center for treatment of major depressive disorder and PTSD. At her intake, Richards told the therapists that she wanted to work on trusting people. In therapy, Richards primarily focused on her negative feelings about her previous relationship and her stress about being able to pay bills and find work. Around the time of her second hearing, Richards's therapist at Northeastern opined that her mental capacity was markedly limited in several areas that would affect her ability to work, including her capacity to understand detailed instructions, sustain a schedule and routine, and complete a normal workday. When she was examined by Dr. Dan Boen, a state-agency psychologist, she said that she had never been on any medication for her psychiatric conditions and that she felt sad and depressed "sometimes." But at her hearing Richards reported that she was doing better. She said that since starting a new romantic relationship her mood had improved and she was feeling happier.

Richards's physical impairments have been treated rather conservatively but consistently. After her electromyography studies revealed mild carpal tunnel syndrome, her doctor advised her to wear a wrist brace but did not impose any work restrictions. For her back pain—caused by moderate degenerative changes to her spine—her doctor initially prescribed stretching, exercise, and medication (Norco). But when her back continued to hurt, she received epidural steroid injections, which provided only temporary relief. Based on these and other ailments, her orthopedist opined that she can lift up to 10 pounds occasionally but cannot carry anything heavier or twist or bend. A consultative physician also observed based on the records a reduced range of motion in her neck, spine, shoulder, knees, and hips.

At her hearing before the ALJ, Richards testified that she had tried to work after 2010, but her pain made it impossible. She said that her mood was better, but that she could not sit or stand for more than 10 to 15 minutes at a time without becoming uncomfortable, and that she had difficulty even lifting a carton of milk. She also testified that the babysitting work she did after her alleged onset date did not show

good health, because she was able to lie down and rest when she did not feel well. Her boyfriend also testified that she can stay seated or standing for only 15 to 20 minutes at a time.

The ALJ asked a vocational expert to consider the work that would be available to a person of Richards's age and experience who could lift, pull, push, and carry 10 pounds frequently; stand or walk for 2 hours and sit for 6 hours of an 8-hour workday; and maintain a posture for 30 minutes before alternating position; but who could tolerate only a "flexible, goal oriented pace." The VE opined that such a person could work in sedentary jobs like addresser, surveillance system monitor, document preparer, or assembler. The ALJ later limited her to only superficial interactions with coworkers, but that did not alter the VE's analysis. The ALJ asked about switching postures more frequently (every 10 to 15 minutes, as Richards testified) and the VE explained that "some" jobs might be available if Richards could remain on task when changing positions every 15 to 20 minutes.

The ALJ applied the five-step analysis found in 20 C.F.R. § 404.1520(a)(4) and found that Richards was not disabled. The ALJ determined at step one that Richards met the insured status requirements and had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ found that she had many severe impairments: degenerative disc disease in her back and neck, scoliosis, headaches, degenerative changes in her right shoulder, obesity, carpal tunnel syndrome, depression, anxiety, and PTSD. At step three the ALJ found that these physical impairments did not equal a listed impairment, and that her mental impairments caused at most moderate limitations.

At step four, the ALJ found that Richards had the residual functional capacity (RFC) to perform sedentary work with some limitations: she could only occasionally lift, carry, push, and pull 10 pounds; could maintain a posture for 30 minutes before changing but could stay on task during that time; and she could occasionally bend and stoop. The ALJ also eliminated jobs requiring fast-paced work or prolonged conversation with coworkers. In assessing the severity of Richards's symptoms, the ALJ found that Richards's testimony was not credible because it suggested greater limitations than what the medical evidence supported. The ALJ adopted the VE's conclusion that Richards could perform jobs that existed in significant numbers. Therefore, the ALJ concluded that Richards was not disabled.

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Richards sought judicial review, but the district judge rejected Richards's two arguments—that the ALJ erred in overemphasizing Richards's activities of daily living and by determining that she was not credible because her alleged onset date was one day after her previous denial of benefits.

On appeal Richards makes two arguments about the ALJ's credibility determination. The first is frivolous. Richards argues that the ALJ improperly relied on the 2011 decision to deny Richards's applications for benefits. Specifically the ALJ commented: "[A] new onset date … (taking place the day after the denial) does not now enhance [Richards's] credibility with respect to being currently disabled, especially in the absence of persuasive evidence that the claimant's conditions suddenly medically deteriorated." But the ALJ's single remark about the unlikely "sudden[]" deterioration of her condition, though unnecessary, is not a major component of his credibility determination or overall reasoning.

Richards then argues that the ALJ erred in finding her testimony about her symptoms to be exaggerated because she engaged in a "somewhat full range" of activities of daily living. Richards's activities of daily living (at least many of the ones cited by the ALJ) are minimal, however, and minimal activities do not establish that a claimant can engage in "substantial physical activity." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). The activities that the ALJ listed include "check[ing] Facebook" and "us[ing] a telephone." The most physically vigorous activity the ALJ mentioned is "do[ing] household chores with breaks."(Id.) The ALJ's use of daily activities to discredit Richards's allegations of psychological symptoms, in particular her anxiety, is similarly questionable. He emphasized that Richards, contrary to some evidence, can tolerate interacting with other people because she has had boyfriends. But her therapist opined that these relationships were dysfunctional and evinced her limited judgment.

Richards's argument ultimately is not persuasive because we reverse a credibility determination only if it is "patently wrong." *See Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008). The ALJ's consideration of Richards's activities of daily living is shaky, but he sufficiently supported the credibility determination with other "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). The ALJ identified meaningful discrepancies between her testimony and the statements she made to her doctors: for example, Richards denied *any* symptoms of anxiety or depression repeatedly to her pain doctors. The ALJ also appropriately based his

determination on Richards's failure to comply with recommended treatment and to provide a reasonable explanation for not doing so: Richards explained that she did not have time to attend the dialectical behavioral therapy that her providers recommended, but the ALJ noted that she did have time to utilize other social (rather than medical) services they offered.

The ALJ also considered Richards's receipt of unemployment benefits and her limited work history. We previously have noted that receiving state unemployment benefits, which tend to require a certification that the claimant is able to work, can be considered as part of an adverse credibility determination when the benefits overlap with the period of alleged disability. *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005); *Lambert v. Berryhill*, No. 17-1627, 2018 WL 3470994, at *7 (7th Cir. July 19, 2018). And the ALJ did not err in considering her limited work history. Infrequent employment before the onset date can suggest, in some circumstances, a disinclination to work rather than a disability. *See Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(3)). Given our deferential review of credibility determinations, the ALJ's analysis was sufficient. *See Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

Richards also argues that she has significant on-task limitations and that the ALJ failed to account for them in her RFC. In so doing, Richards argues that she cannot maintain competitive employment because, according to the VE, employers tolerate workers being off-task for only 10% of a workday. Richards says that she is distractible for both physical and cognitive reasons: she cannot concentrate while she is changing position from sitting to standing, and she has psychological symptoms such as flashbacks to traumatic experiences. The Commissioner contends that this argument is waived because Richards did not raise it in the district court. Richards counters that, because she challenged the RFC generally, she did not waive the argument, citing *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012).

Richards did not preserve this argument. In *Arnett*, the Commissioner maintained that the claimant's argument was waived not because she did not raise it at all in the district court, but rather because she did not adequately develop it. 676 F.3d at 593. The court disagreed, noting that she had "devoted several pages of her brief" to arguing that the RFC was erroneous. *Id*. That is far from what happened here. In the district court, Richards challenged the RFC only as it related to the allegedly erroneous credibility determination. (As the district judge aptly noted, the focus of Richards's argument was "not clear from the briefing" but appeared to challenge the discussion of

living activities at steps three and four.) Richards's argument on appeal that the RFC was wrong for a different reason is insufficient to avert waiver. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013).

And even if Richards had made the argument in the district court, she did not adequately develop it in her appellate brief. Richards argues that "the hearing record intuitively lends itself to an on-task credibility assessment." But we cannot reasonably expect an ALJ to "intuit" a functional limitation from the whole record, nor can we look at the record anew to draw one out. Richards bears the burden of showing that she had impairments that affected her ability to work. *See Scheck v. Barnhart,* 357 F.3d 697, 702 (7th Cir. 2004). Richards just lists a variety of symptoms (such as pain in her extremities and headaches) that "hint" at a "larger on-task problem." But pointing to various diagnoses and complaints and saying that they might hinder Richards is insufficient to establish the existence of a functional limitation. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment.").

Because Richards fails to raise any meritorious argument that the ALJ's decision was not supported by substantial evidence, we AFFIRM the judgment of the district court.