In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2602

MILDRED THOMAS,

*Plaintiff-Appellant*,

*v.*

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-04716 — **Sheila M. Finnegan**, *Magistrate Judge.*

ARGUED JANUARY 7, 2014 — DECIDED MARCH 11, 2014

Before WOOD, *Chief Judge*, and POSNER and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge.* Mildred Thomas suffers from a number of potentially-disabling impairments, including sciatica, angina, degenerative disc disease, fibromyalgia, and diabetes. The Social Security Administration denied her request for disability insurance benefits and supplemental

security income. The district court affirmed on appeal. We reverse.

## I. BACKGROUND

Thomas filed an application for disability insurance benefits in December 2009, claiming that she suffered from sciatica, diabetes, angina, a trigger thumb in her left hand, and chronic obstructive pulmonary disease ("COPD"). She was also morbidly obese, with a body mass index of around 45.

During the application process, Thomas saw a consultative examiner, Dr. M. S. Patil. Dr. Patil noted a reduced range of motion in Thomas's lumbar spine, hips, and knees as well as moderate difficulty squatting and getting on and off the examining table. Dr. Patil also performed an x-ray of Thomas's lumbar spine, which, although severely limited by Thomas's obesity, appeared to show narrowed disc space. Later that month, a state agency doctor, Dr. Thomas Kenney, reviewed Thomas's medical records, including Dr. Patil's report. Based on this information, Dr. Kenney determined that Thomas had the residual functional capacity ("RFC") to perform light work.

At the administrative hearing, Thomas testified that her primary complaint was severe sciatic nerve pain that traveled to her butt, thighs, and knees. She said she could not stand for more than fifteen minutes or sit for more than twenty minutes at a time. She further stated that she could only walk about half a block and that she could not do laundry or vacuum. And she suffered from recurrent inflammation in her left thumb. When the inflammation was bad, she could not use her left hand at all; treatment by injection allowed her to use the hand but she

remained unable to bend her left thumb. Thomas also used her inhaler four times a day to control her asthma.

A vocational expert ("VE") also testified about Thomas's past relevant work and the jobs available in the regional economy. The VE described Thomas's prior work as a phlebotomist as heavy, semiskilled work because Thomas had to lift and move patients in addition to drawing their blood. The VE also noted, however, that phlebotomy was typically categorized as requiring only light exertion.

The ALJ denied Thomas's claim in a written opinion. She found that Thomas retained the RFC to perform light work, despite the fact that she suffered from eight severe impairments.[1] She noted that the objective medical evidence was consistent with Thomas's allegation of degenerative disc disease in the lumbar spine, but explained that her treatment was "routine and conservative" and thus supported only a limitation to light work. The ALJ also considered Thomas's history of diabetes, high cholesterol, hypertension, stable angina, asthma, obesity and COPD. She found that none of these conditions imposed any limitations greater than that imposed by her back pain. She also stated that Thomas was no longer experiencing trouble with her trigger thumb. Further, the ALJ found Thomas's complaints of pain incredible because, although Thomas described diabetes and sciatica as her primary impairments, she was taking diabetes medication and had received only minimal sciatica treatment. Similarly, the

---

[1] The eight severe impairments the ALJ identified are diabetes, hypertension, degenerative disc disease in the lumbar spine, high cholesterol, asthma, COPD, stable angina, and obesity.

ALJ relied on the fact that the medical record did not show a "medical necessity" for Thomas to lay down or to abstain from doing laundry to infer that Thomas in fact had a higher RFC than her daily activities would indicate.

The Appeals Council denied review of Thomas's claim, and she appealed to the district court. The district court affirmed the ALJ's decision.

## II. ANALYSIS

On appeal in a disability benefits case, we review the district court's decision *de novo*, resulting in direct review of the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This direct review is also deferential; we will uphold the ALJ's decision so long as it is supported by "substantial evidence" and the ALJ built an "accurate and logical bridge" between the evidence and her conclusion. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). This deference is lessened, however, where the ALJ's findings rest on an error of fact or logic. *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013).

*A. The ALJ improperly discredited Thomas's testimony*

The ALJ found Thomas's testimony about the severity of her symptoms incredible, noting that (1) although she testified that sciatica and diabetes were her main problems, she had received effective treatment for the diabetes and minimal treatment for sciatica; (2) the medical records showed that she had a normal gait, neurological testing and her Romberg sign[2]

---

[2] The Romberg sign refers to swaying or falling over when standing with eyes closed and ankles touching. It is seen in tabes dorsalis and other

(continued...)

were normal, and she had only mild degenerative arthopathy; (3) the medical records did not support reaching difficulties with her shoulders; and (4) her medical records did not show a medical necessity for laying down during the day or limitations on sitting and standing.

First, the ALJ reasoned that because Thomas testified that sciatic nerve pain and diabetes were her main problems, and those problems were being treated, Thomas had greater overall functioning capacity than she described. It is true that her diabetes appeared to be under control and was not severely limiting her daily activities. But Thomas testified primarily that the sciatic nerve pain prevented her from walking more than half a block and doing laundry and required her to lie down for large portions of the day. The ALJ thought that because Thomas had only minimal treatment for this pain, it could not be as severe as Thomas alleged. But the treatment records are replete with notes that the pain medication was not helping. And sciatica is not always susceptible to more severe treatments; in some cases, the cause cannot be identified. *The Merck Manual of Medical Information* 571 (Mark H. Beers et al. eds., 2d home ed. 2003).

The ALJ also appears to have ignored the medical evidence that supported Thomas's complaints of pain. An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). While she

---

[2] (...continued)
diseases of the nervous system. *Sign, Dorland's Illustrated Medical Dictionary* (32d ed. 2012).

noted that Thomas's gait and neurological exams were normal, she ignored evidence that Thomas had difficulty getting on and off the examining table and had limited ranges of motion in her hips and knees. And elsewhere in the opinion, the ALJ characterized Thomas's x-rays as normal; in fact, they showed transitional vertebra, narrowed disc space, and sclerosis.

The ALJ further noted that the medical evidence did not support that Thomas had any shoulder problems that would limit her ability to reach overhead. But Thomas had been diagnosed with fibromyalgia, a condition whose primary symptom is pain and stiffness in the muscles and joints. *Fibromyalgia, Dorland's Illustrated Medical Dictionary* (32d ed. 2012).

Finally, the ALJ found that the medical evidence did not support Thomas's allegations of pain, noting that there was no "medical necessity" for Thomas to lie down during the day. But a lack of medical evidence supporting the severity of a claimant's symptoms is insufficient, standing alone, to discredit her testimony. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Because all of the other reasons given by the ALJ were illogical or otherwise flawed, this reason cannot alone support the finding that Thomas was incredible.

*B. The ALJ assessed Thomas's RFC improperly by failing to consider the combined effect of her ailments*

A disability claimant's RFC describes the maximum she can do in a work setting despite her mental and physical limitations. 20 C.F.R. § 404.1545(a). When determining an individual's RFC, the ALJ must consider all limitations that arise from

medically determinable impairments. *Arnett*, 676 F.3d at 592; *Villano*, 556 F.3d at 563.

The ALJ found that Thomas had the RFC to perform light work, so long as Thomas avoided concentrated exposure to "dust, fumes, and gases." In making this determination, the ALJ considered each category of Thomas's impairments *seriatim*, finding that no single category would prevent Thomas from doing the slightly-restricted light work indicated in the final RFC. But the ALJ did not consider how Thomas's back and leg pain, combined with her respiratory symptoms, would impact her ability to work. This combination of impairments could impose greater restrictions than any of Thomas's impairments taken singly. For instance, the fact that Thomas had to use her inhaler four times a day, even without greater-than-normal exposure to dust or other irritants, would compound the restrictions imposed by her back and leg pain. Without any evidence that the ALJ considered Thomas's impairments in concert, we cannot say that the ALJ built the required "accurate and logical bridge" between the evidence and her conclusion. *Simila*, 573 F.3d at 513 (7th Cir. 2009).

Similarly, the ALJ did not consider the impairments that she had previously ruled singly non-severe, which included Thomas's fibromyalgia, sciatica, left thumb inflammation, and history of arthritis. These, too, should have been considered in concert with Thomas's other impairments to determine their collective effect on her ability to work. And the ALJ made a blatant factual error when she stated that Thomas's thumb no longer bothered her. In fact, Thomas testified at the hearing that she could not bend her left thumb.

We cannot find that these errors were harmless. It seems to us that taking all of Thomas's impairments together would result in a more restricted RFC than the ALJ formulated. And the ability to use her left hand was integral to Thomas's past work as a phlebotomist, and thus her claim. As the VE testified, if Thomas were limited to "occasional grasping" with her left, non-dominant hand, she could not work as a phlebotomist, even at a light exertional level. If Thomas could not do her past work, she would have been considered disabled and thus eligible for benefits. 20 C.F.R. app. 2 § 404(p) (a person over age fifty-five who lacks transferable skills and cannot do previous relevant work is considered disabled).

*C. The ALJ was not required to order a pulmonary function test*

Thomas additionally argues that the ALJ erred by failing to order a pulmonary function test, which Thomas requested in a pre-hearing memorandum. An ALJ is under an obligation to develop a "full and fair record," *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000), but this obligation is not limitless. And in this case, it is not clear what the pulmonary function test would have added to the record. Although it is clear that Thomas suffered from some pulmonary disorders, it is not obvious that the existing medical evidence of those disorders was so scant that the ALJ should have ordered additional testing to determine their severity.

*D. The ALJ did not err by failing to obtain the medical source statement from Dr. Patil.*

Last, Thomas asserts that the ALJ erred by declining to order a medical source statement from Dr. Patil, the consultative examiner. A medical source statement is a statement from

a treating or examining physician that explains what a claimant can do despite her impairments. Illinois has never required such statements, and the completeness of an administrative record is generally committed to the ALJ's discretion. *See Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (generally upholding ALJ's determination that record was adequate). We do not see any reason to impose such a requirement in this case, particularly considering that the determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining doctor—to decide. 20 C.F.R § 404.1527(d) (the final responsibility for determining your RFC is reserved to the commissioner).

### III. CONCLUSION

For the foregoing reasons, we REVERSE the decision of the district court and REMAND to the Social Security Administration for proceedings consistent with this opinion.