NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 6, 2018
Decided August 9, 2018

**Before**

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 17-3189

| | |
|---|---|
| BRYAN D. COLLINS, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Eastern District of Wisconsin. |
| | |
| *v.* | No. 16-CV-1044 |
| | |
| NANCY A. BERRYHILL, | David E. Jones, |
| Acting Commissioner of Social Security, | *Magistrate Judge*. |
| *Defendant-Appellee*. | |

**O R D E R**

Bryan Collins applied for supplemental security income from the Social Security Administration based on back pain, deep vein thrombosis, depression, and anxiety. An administrative law judge ("ALJ") found that Collins was exaggerating his symptoms, that the medical evidence did not support his claim, and that he could perform sedentary work with some restrictions. Because substantial evidence supports the ALJ's decision, we affirm the judgment.

Collins applied for benefits at age 42, alleging an onset date in April 2012. He had completed one year of college, and his only full-time employment was a year spent as an iron metalworker from 2006 to 2007. He identified several impairments that

prevented him from working: back pain resulting from an old gunshot wound; pain in his feet, left leg, and right hip, all of which he associated with a history of blood clots; depression; and anxiety. (Because Collins does not dispute the ALJ's conclusions regarding his psychological conditions, we recount only the medical evidence relating to his physical conditions.)

In July 2012, Dr. Mohammad Fareed performed a consultative exam at the request of the state agency and found few limitations. Collins reported severe back pain stemming from being assaulted and shot sometime in the early 1990s. Dr. Fareed found tenderness in Collins's spine and limited range of motion, though he wrote that Collins appeared "comfortable without any acute distress." X-rays showed degenerative disc disease in Collins's spine.

A year later Collins was seen by an internist, Dr. Christopher Weber who, after one examination, opined that Collins had extreme functional limitations. Dr. Weber diagnosed depression, chronic pain, "AC separation" (Collins's shoulder dislocation following a car accident), and sciatica. He concluded that Collins could walk less than a block, sit for only 20 minutes, stand for only 45 minutes, would need "constant" unscheduled breaks during a workday, and could never lift even 10 pounds. Dr. Weber did not support his opinion with any explanation, test results, or treatment notes.

In March 2014, Collins sought treatment for leg pain from another internist, Michael Weinstein who diagnosed a clot and prescribed a blood thinner. X-rays of Collins's spine and hip taken two months later showed degenerative disc disease and mild loss of disc space in Collins's spine.

Several months later Collins sought treatment from family-medicine practitioner Umar Shad for his leg and back pain. Dr. Shad advised Collins to continue taking blood thinners, and to rest and apply ice and heat to his back. Dr. Shad also referred Collins to orthopedic and pain-management specialists.

In 2013 and 2014, Collins frequently visited emergency rooms, his primary method of treatment and his source for painkiller and blood-thinner prescriptions. None of the medical examiners ever found that he had severe mobility issues, though he occasionally had swelling and pitting (indentation caused by fluid buildup) in his legs.

At a hearing before an ALJ in early 2015, Collins, represented by counsel, testified to extreme functional limitations. He said his back pain was constant and his leg hurt when he walked. Collins twice tried to work but was unable to do so because of his back pain. He explained that he could walk only three or four blocks, sit and stand only five to ten minutes each, and lift about eight pounds. He lived with his mother but was unable to help much around the house. When asked to identify his primary-care physician, Collins said he saw Dr. Weber every two weeks.

A vocational expert ("VE") testified that Collins could find work in the national economy despite having some limitations. When asked if there were jobs for someone who could perform only sedentary work and who needed to change from sitting to standing at will, the VE replied such a person could work as a food preparer, lobby attendant, assembly worker, or office helper. The VE clarified that lobby attendant is considered light work but could be done either sitting or standing and with no lifting. The ALJ asked the VE whether her opinion was otherwise consistent with the Dictionary of Occupational Titles ("DOT"), and the VE said that it was, except that the DOT did not cover a worker's need to change between sitting and standing. The VE based her testimony that a lobby attendant could change positions on published research and 30 years' experience placing people with disabilities in jobs.

The ALJ applied the familiar five-step analysis, *see* 20 C.F.R. § 416.920(a), and concluded that Collins was not disabled. Collins does not dispute the results of the first three steps. He takes issue with the ALJ's conclusion at step four that he could perform unskilled, sedentary work with some further restrictions, including the need to change from sitting to standing at will. The ALJ gave little weight to Dr. Weber's opinion that Collins had extreme functional limitations. The ALJ found the opinion conclusory, that Dr. Weber wrote it after only his first visit with Collins, and that it was inconsistent with the mild abnormalities revealed by objective imaging and other physical exams performed by the consultative examiner, the hospital physicians, and Drs. Shad and Weinstein. The ALJ also found that Collins's testimony regarding the extent of his pain was inconsistent with the conservative course of treatment he received, as well as the findings by objective medical tests and physical examiners. Nonetheless, because of Collins' pain and reduced range of motion, the ALJ restricted him to sedentary work.

At step five, the ALJ determined that a significant number of jobs existed that Collins could perform; the ALJ relied on the VE's testimony that Collins could find sedentary work as a food preparer, lobby attendant, assembler, or office helper. The ALJ noted that the DOT does not match the VE's testimony that "lobby attendant" is

sedentary work and that all four jobs allow for change between sitting and standing positions at will. But the ALJ credited the VE's conclusions based on her stated reliance on published research and her 30 years' experience.

The Appeals Council denied review, and so the ALJ's decision stands as the final decision of the agency. *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014).

Collins, represented by different counsel, appealed to the district court and submitted new medical evidence, arguing that the ALJ had failed to develop the record by not ordering further medical records from Dr. Weber's practice. To show prejudice, Collins submitted records from Dr. Weber's practice covering four visits that he had with three providers between May and December 2013. Without these records, Collins maintained, the ALJ could not have properly considered the factors established by 20 C.F.R. § 416.927(c) for evaluating a treating physician's opinion.[*] The magistrate judge, presiding with the parties' consent, rejected Collins's argument, concluding that no evidentiary gap needed to be filled and the missing records did not demonstrate symptoms or findings more severe than those found by the ALJ.

On appeal, Collins maintains that the ALJ failed in his duty to develop the record because he did not collect other medical records from Dr. Weber's office. He cites *Nelms v. Astrue*, 553 F.3d 1093, 1098–99 (7th Cir. 2009), in which this court concluded that an ALJ's failure to fairly and fully develop the record is error, as long as the applicant can show prejudice. Collins argues he was prejudiced by the ALJ's failure to collect these other medical records because they were necessary to properly evaluate the opinion of his treating physician, Dr. Weber, in accordance with the factors listed by 20 C.F.R. § 416.927(c), including the length of the treatment relationship and frequency of examination. Collins contends the ALJ should have known this evidence existed because he listed Dr. Weber and another provider from Dr. Weber's practice on a form statement of recent medical treatments and testified at his hearing that he saw Dr. Weber, his primary care physician, every two weeks.

An ALJ has an independent duty to develop the record fully and fairly. *See* 20 C.F.R. § 416.912(b); *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). This duty is not eliminated when a claimant has counsel, as the Commissioner concedes. *See Smith*

---

[*] Collins also included medical records from other providers, some of which are already in the record and some of which postdate the ALJ's decision.

*v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). *But see Nelms*, 553 F.3d at 1098 ("This duty is enhanced when a claimant appears without counsel….").

Even if we assume that the ALJ breached this duty, we agree with the Commissioner that the failure to collect the supplemental records from Dr. Weber's practice did not prejudice Collins. In weighing a treating physician's opinion, an ALJ must consider the factors found in 20 C.F.R. § 416.927(c), but need only "minimally articulate" his reasoning; the ALJ need not explicitly discuss and weigh each factor. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The ALJ satisfied this standard in this case by considering the length of the treatment relationship and frequency of examination; the supportability of Dr. Weber's opinion; and the consistency of the opinion with other medical evidence in the record. *See* 20 C.F.R. § 416.927(c)(2)(i), (3)–(4), (d). Nothing in the supplemental records undercuts the ALJ's consideration of those factors. Dr. Weber acknowledged in his opinion that he had examined Collins only one time. That he later saw Collins once more, or that Collins occasionally saw other physicians in the practice, does not affect the weight that the ALJ should have given an opinion based on only one examination. Moreover, the findings in the supplemental records are all consistent with the other medical evidence in the record: subjective reports of pain, and only insignificant objective findings. The ALJ reviewed other medical records—including ones that predated and postdated Dr. Weber's opinion—and these contained remarkably similar findings. For these reasons, these supplemental records simply do not constitute a significant omission.

Collins next argues that the ALJ did not properly resolve the "apparent" conflicts between the VE's testimony and the DOT as required by SSR 00–4p, 2000 WL 1898704, at *4. *See Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008). Collins contends that the four sedentary jobs identified by the VE are listed as light work in the DOT and that the DOT does not specify that any of them can be performed while changing positions at will.

We agree with Collins that there is an "apparent" and unresolved conflict between the VE's testimony that Collins could find sedentary work as a food preparer, lobby attendant, assembler, or office helper, versus the DOT, which classifies food preparer and office helper as light work. *See* U.S. DEP'T. OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES, 65038A, 239.567-010, https://occupationalinfo.org/. Although the conflict was not identified at the hearing, it would have been obvious had the ALJ checked the DOT and it was incumbent on the ALJ to resolve it. *See Pearson v. Colvin*, 810 F.3d 204, 205–06, 210–11 (4th Cir. 2015) (conflict was "apparent," even though not

identified at hearing, when VE testified claimant could perform job despite not being able to reach but DOT classified job as requiring reaching).

But this oversight is not fatal because the DOT lists assembler positions that are sedentary, *see, e.g.,* DOT 739.687-066, 715.687-114, 739.684-094, and the VE estimated that 55,000 of these jobs allow changing position at will. (A.R. 83.) That is a significant number of jobs in the national economy, so any error would be harmless. *See Brown v. Colvin,* 845 F.3d 247, 255 (7th Cir. 2016) (failure to resolve apparent conflict not fatal when at least 5303 other appropriate jobs exist in the national economy).

Finally, Collins challenges the VE's testimony by questioning whether those sedentary assembler jobs in fact allow a worker to change from sitting to standing at will. But Collins forfeited that challenge by not objecting at the hearing which, in any event, is not in "apparent" conflict with the DOT. *See Brown,* 845 F.3d at 254. Because the DOT does not specify whether jobs allow changing from sitting to standing, the VE's testimony supplemented the DOT and did not conflict with it. *See id.*

AFFIRMED