In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2723

DENISE L. MCCLESKY,

*Plaintiff-Appellant,*

*v.*

MICHAEL J. ASTRUE, Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 08 C 50020—**P. Michael Mahoney**, *Magistrate Judge.*

ARGUED APRIL 9, 2010—DECIDED MAY 18, 2010

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* Denise McClesky, age 41 at the time of the alleged onset of what she claims to be total disability, appeals from the district court's affirmance of the Social Security Administration's denial of her claim. It is uncontroversial that she suffers from major depression and has limited use of her fingers, hands, and arms because of numbness, weakness, and pain in these extremities and in her shoulders, as a result of a combina-

tion of fibromyalgia and thoracic outlet syndrome (compression of blood vessels or nerves in the region between the collarbone and the highest rib).

After the boilerplate recital (see *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010)) that "based on the evidence, the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible," the administrative law judge began picking apart McClesky's testimony, noting first that she "has not always pursued things that would elevate [*sic*—the judge meant 'alleviate'] that distress." In support of this statement the judge pointed out that McClesky had visited a doctor only once in more than two years. That was mistaken. Her visits to doctors and other medical practitioners were frequent, and though her lawyer argued without contradiction that her client could not afford even more frequent visits to doctors, the administrative law judge thought it significant that McClesky had once told "her then neurologist she did not like to take medication." In fact she takes Advil and Tylenol, and while she refuses to take Neurontin (misspelled "Neurotin" in the administrative law judge's opinion) (the trade name of Gabapentin), and psychotropic drugs, including Lexapro, these are powerful and expensive drugs that many people are reluctant to take or unable to afford. And Lexapro and other psychotropic drugs are for treatment of depression and other mental illnesses rather than, as the administrative law judge seems to have thought, for pain. Nor is it

clear that McClesky can afford these drugs; she has no health insurance and, it seems, no income.

The administrative law judge remarked that "even though exercise has been beneficial to her, she does not always do the exercises." (Who does?) The judge evinced no recognition that McClesky's psychiatric disorder might interfere with her ability to follow a proper regimen for alleviating her physical ailments. Cf. *Kangail v. Barnhart*, 454 F.3d 627, 630-31 (7th Cir. 2006).

The judge thought the fact that McClesky had attended college for a semester cast doubt on her claims of pain and weakness. But she testified without contradiction that fatigue and weakness were the reason she dropped out after only one semester.

She had told doctors that she had quit a job at Wendy's because it was too much for her, but testified—inconsistently in the view of the administrative law judge—that she had quit because she wasn't earning enough. In fact she testified without contradiction that she quit after finding it physically impossible to work the number of hours at Wendy's that she would have needed in order to earn a wage that would have enabled her to support herself.

The judge further doubted McClesky's credibility because of mistaken statements that she made, such as that she had last used illegal drugs in 1983. In fact she had been consuming cocaine, including the crack form, until at least 2004. The judge said that her "lack of candor about her substance use decreases the credibility of her statements," without considering the possibility that she

had been afraid to admit to an official that she had been until recently (and perhaps still is) committing crimes. Granted, lack of candor on this subject reveals that McClesky is willing to lie about subjects in order to promote her self-interest. Maybe drugs are not the only subject on which she is concealing information. And a person who can afford cocaine might be able to afford prescription drugs, though narcotic drugs like Lexapro and Neurontin are expensive as we said and quite possibly more so than self-medicating with crack. If McClesky prefers unlawful drugs over their lawful counterparts for reasons other than cost, this could be a reason to deny her request for disability benefits. But there is no discussion of the issue in the administrative law judge's opinion.

The judge grudgingly conceded that McClesky "cannot do repetitive hand motions on a frequent basis," though she could use them "on an occasional basis." In particular, he said, she can't do a job that requires "reaching over-head" or frequent use of her hands or arms. And therefore, the judge concluded, McClesky cannot do any of her previous jobs "as a file clerk, light semi-skilled work; billing clerk, sedentary semi-skilled work; secretary, sedentary skilled work; and quality control worker (food tester . . .), light unskilled work."

So what kind of work can she do? A vocational expert, told her limitations by the administrative law judge, named only two jobs available in McClesky's region (the Chicago metropolitan area) that she would be physically capable of doing: surveillance system monitor and

telemarketer. Within a month after the hearing, however, and more than a year before the administrative law judge issued her decision, McClesky's lawyer submitted to the judge a letter from another vocational expert certified to testify in social security disability cases, which states that all security guards and surveillance system monitors require a license from the Department of Homeland Security and that a person would need training to qualify for such a license.

This is implausible. The administrative law judge could have reopened the evidentiary record for a determination of whether the letter was accurate and if so whether McClesky could qualify for such a license (if it really is required), considering her physical and mental limitations. Instead the judge, when she got around to writing her opinion denying McClesky's application for disability benefits, said that "although this assertion [that a surveillance system monitor would need a license, and training to qualify for the license] seems to paint with a broad brush as there is no indication that this requirement literally applies to every job even assuming most of the surveillance system jobs would be affected, and there is no evidence of that, there remain a significant number of jobs in the economy." But the only other job that either the vocational expert who testified in the present case, or the administrative law judge, had mentioned that McClesky could do was telemarketing, and the vocational expert had overlooked the fact that while telemarketers generally use a headset in making calls to potential customers, they still have to be able to type on a computer keyboard in order to make a

record of the call if the person they speak to is interested in the product being marketed. *The Dictionary of Occupational Titles*—the Bible of vocational experts—says that telemarketing requires "frequent fingering." McClesky is physically incapable of that; she can do only "occasional typing."

This gaping hole in the record was never filled. In violation of the *Chenery* doctrine, e.g., *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Banks v. Gonzales*, 453 F.3d 449, 451 (7th Cir. 2006); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006), the Social Security Administration's lawyer argued to us that the evidence about surveillance jobs that was submitted after the hearing should not have been considered by the administrative law judge and should not be considered by us. The judge had not excluded the evidence; she had admitted it, accepted its truth for purposes of her decision, and ruled erroneously that the evidence made no difference because McClesky was capable of working as a telemarketer if not as a surveillance system monitor. In addition the judge failed to consider whether McClesky would be able, physically and financially, to undergo the training required to obtain a license to be a surveillance system monitor.

Not only is it improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision; there is no basis for the lawyer's argument that the post-hearing evidence was inadmissible. The Social Security Administration's regulations do provide that "if possible, the evidence or a summary of evidence [that the claimant] wish[es] to have considered at

the hearing should be submitted to the administrative law judge with the request for hearing or within 10 days after filing the request." 20 C.F.R. § 404.935. But the judge "may also reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence." 20 C.F.R. § 404.944. The Social Security Administration suggests to applicants that "after an administrative law judge hearing . . . [they] submit post hearing evidence as soon as possible." Social Security Administration, "Best Practices for Claimants' Representatives," www.ssa.gov/appeals/best_practices.html (visited Apr. 22, 2010); *see* 1 National Organization of Social Security Disability Claimants Representatives, *Social Security Practice Guide* § 10.04 (2009); Richard C. Ruskell, *Social Security Claims Handbook* §§ 3:14, 9:88 (2009). The implication is that "evidence can be submitted up to the date an ALJ decision is issued." 1 Barbara Samuels, *Social Security Disability Claims: Practice and Procedure* § 16:51 (2009).

And in fact the submission and consideration of post-hearing evidence are common in social security disability cases—especially evidence consisting of "posthearing affidavits of experienced workers, supervisors, etc., to rebut vocational 'expert' testimony which cannot be anticipated prior to hearing," Ruskell, *supra*, § 9:88, since the claimant has no clue to what the vocational expert will testify until the end of the hearing. He testifies last and bases his testimony on hypothetical questions, summarizing the claimant's condition, asked him by the administrative law judge at the end of the hearing. If, as in this case, he stumbles, it is proper for the claimant

to submit further evidence after the hearing, provided this is done promptly, as it was here.

The lawyer for the Social Security Administration also suggested to us that the vocational expert who wrote the letter about the surveillance jobs, Edward Pagella, was some unknown interloper. Actually he's one of the vocational experts who testifies regularly in social security disability cases. He has managed a vocational rehabilitation and consulting company ("Health Connection of Illinois") since 1989, healthconnectionil.com (visited Apr. 21, 2010); has consulted as an expert for the Social Security Administration for twenty years; and has been mentioned by name as the testifying expert in several reported social security disability cases. See *Grieves v. Astrue*, 600 F. Supp. 2d 995, 997 (N.D. Ill. 2009); *Kopulos v. Barnhart*, 215 F. Supp. 2d 996, 998 (N.D. Ill. 2002); *Vadeboncoeur v. Callahan*, 976 F. Supp. 751, 754-55 (N.D. Ill. 1997).

The government's rather wild arguments were made by its lawyer only at oral argument, and so perhaps should be forgiven. In his brief all he said about Pagella's affidavit was that the administrative law judge was not *required* to consider it. The decision whether to reopen the hearing to receive "new and material evidence" is indeed discretionary, 20 C.F.R. § 404.944, and we need not decide whether it would have been an abuse of discretion for her to refuse to consider the post-hearing evidence, since she did consider it. We can't find any cases ruling on when an administrative law judge's refusal to consider new and material evidence first submitted after the hearing might be an abuse of discretion.

The case must be returned to the Social Security Admin-istration for further proceedings in light of the inade-quate analysis of credibility by the administrative law judge and her erroneous assumption that a job as a telemarketer would be consistent with McClesky's limita-tions.

REVERSED AND REMANDED.