In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

No. 13-3473

RANDY HANSON,

*Plaintiff-Appellant,*

*v.*

CAROLYN W. COLVIN, Acting Commissioner of Social
  Security,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:12-cv-00822-CNC — **Charles N. Clevert, Jr.**, *Judge.*

———————————

ARGUED JULY 9, 2014 — DECIDED JULY 30, 2014

———————————

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff, a former laborer, applied for social security disability benefits, claiming to be unable to work a full 40-hour week because of acute lower back pain that radiates into his right leg. He has had a variety of treatments and takes a number of medications such as oxycodone and percocet, but the treatments and medications give him, he claims, only limited relief. His application was

denied; the Appeals Council of the Social Security Administration affirmed the denial on the basis of the administrative law judge's reasoning and the district court, to which the applicant turned for relief, also affirmed, precipitating this appeal.

The case comes down to what the administrative law judge thought, probably erroneously, was a disagreement between two physicians whose examination reports were submitted in the administrative proceeding. One was a neurologist named Virendra Misra who diagnosed the plaintiff with severe radiculopathy (a nerve disorder that causes radiating pain), and concluded that the plaintiff would not be able to tolerate more than four hours of working a day, which if true would make him totally disabled within the meaning of the Social Security Act and therefore entitled to the disability benefits that he is seeking. The other physician, David DeWitt (consistently misspelled "Dewitt" in the administrative law judge's opinion), a consulting rather than treating physician (oddly, the administrative law judge did not mention what DeWitt's medical specialty is–he is an orthopedic surgeon), examined the plaintiff only once. While agreeing that the plaintiff had radiculopathy, DeWitt did not state that the condition was so severe as to prevent him from being able to work. He did however say that the plaintiff "should avoid prolonged standing, walking and sitting activities, unless these can be performed with frequent breaks as the symptoms dictate."

The administrative law judge thought well of DeWitt but ill of Misra, about whom he said that "the objectivity of that doctor is brought into question, particularly when he was willing to offer such extreme estimates after conceding that

he had only seen claimant twice for relatively short cursory exams. Though he is a neurologist, his statements that claimant had severe radiculopathy are not objectively supported by a majority of the records in the file, including the objective evidence—x-rays and the MRI scan—both of which failed to show any nerve root impingement or disc herniation. The fact that he has shown no interest in confirming claimant's subjective complaints with actual testing (i.e. an EMG-nerve conduction velocity study) also seems strange, particularly if claimant is in the extreme degree of pain he claims to be." The administrative law judge was very critical of the fact that Dr. Misra's treatment notes "border on being illegible and offer little information," and that "there is no indication that Dr. Misra sought any type of diagnostic study to determine whether there [sic] surgery was a viable option." He said that he "accords Dr. Misra's two opinions little weight for the reasons stated above, most notably the limited treating history, the lack of objective evidence supporting the doctor's restrictive limitations, and the lack of an explanation that would reconcile the difference between the objective and subjective evidence."

Turning to Dr. DeWitt's evidence, the administrative law judge said that "the most detailed physical examination report comes from Dr. David Dewitt. … [T]here was a clear subjective element to claimant's presentation, the physician [DeWitt], for example, commenting that sensation was intact to light touch in all dermatomes, but there was a 'subjective' decrease [in] sensation over the lateral aspect of the right foot and calf. … The undersigned accords Dr. Dewitt's opinions significant weight."

A dermatome is an area of skin in which the sensory neurons all come from a single nerve. The administrative law judge may have thought that when DeWitt said that "sensation was intact to light touch in all dermatomes," he was denying that the plaintiff had radiculopathy. But pain, weakness, or decreased deep-tendon reflexes may be evidence of damage to the root of the nerve and therefore support a diagnosis of radiculopathy—and DeWitt's examination report, in a section headed "Impressions," states that the plaintiff does in fact have radiculopathy.

The administrative law judge thought DeWitt's report refuted Misra's finding, based on an MRI, that the pain and numbness in the plaintiff's leg were caused by nerve-root damage. But apart from the fact that what was relevant was not the cause of the pain and numbness but the severity of these symptoms and whether they disabled the plaintiff from working full time, there was no inconsistency in the diagnoses. DeWitt found decreased sensation in the same leg in which Misra, on the basis of the MRI, found decreased sensation.

The administrative law judge may have been misled by DeWitt's use of the word "subjective," which he seems to have thought meant that DeWitt believed the plaintiff was malingering. Nowhere did DeWitt suggest he thought this or that there was any discrepancy between his findings and the plaintiff's own description of his symptoms. In stating that while "sensation is intact to light touch in all dermatomes of the bilateral lower extremities … [the plaintiff] has subjective decreased sensation over the lateral aspect of the right calf as well as the lateral aspect of the right foot," and in concluding that the plaintiff "clearly has subjective de-

creased sensation," DeWitt was saying that plaintiff had numbness in his leg despite the absence of the specific symptom of an unhealthy sensation in his dermatomes. As near as we can determine, he meant that while the patient can feel light touches everywhere on his leg, he has decreased sensation in his right calf and foot, relative either to his left calf and foot or to what is normal.

In addition, in contrast to what the administrative law judge reported, DeWitt said that "an MRI showed two disc herniations as well as some scoliosis in [the plaintiff's] lumbar spine." He said that "a repeat MRI would be of significant benefit if [the plaintiff] has not had one in the recent past as well as a repeat evaluation for a [*sic*] possible epidural injections or possible surgical intervention for decompression." And he concluded as we said by stating that the plaintiff "should avoid prolonged standing, walking and sitting activities, unless these can be performed with frequent breaks as the symptoms dictate." This leaves entirely unclear how many hours in a day DeWitt thought that the plaintiff could work, and therefore what basis the administrative law judge had for concluding that the plaintiff could perform his "past relevant work" and therefore was not permanently disabled. Social Security Ruling 96-8p, 1996 WL 374184; *Melville v. Apfel*, 198 F.3d 45 (2d Cir. 1999).

Notice that although the administrative law judge was critical of Misra for not ordering a nerve conduction study, DeWitt didn't recommend such a study. And we repeat that although the judge said that the MRI had not revealed any disc herniation, DeWitt said it had.

The administrative law judge was skeptical about Misra's report but should have been skeptical of DeWitt's as well,

not because there appears to be anything wrong with DeWitt's analysis (or for that matter Misra's, except poor handwriting) but because there is nothing in it on which a finding that the plaintiff is not totally disabled could be based. Both physicians diagnosed radiculopathy. Misra thought it severe; DeWitt did not indicate how severe he thought it but neither did he indicate that he thought it not severe. Although a finding of total disability could thus well be based on the reports considered together, there is enough uncertainty to warrant the administrative law judge, if he remains skeptical of the plaintiff's claim, to order a further examination of the plaintiff by a qualified physician instructed to offer a medical opinion (if possible) on the plaintiff's physical ability to engage in full-time work. If the judge does that, he should probably ask the physician to testify as well as to submit a written report, in order to enable clarification of his opinion through questioning by counsel and the administrative law judge. What is clear is that the rejection of the disability claim, based as that rejection was primarily on the DeWitt report, cannot be said to be supported by substantial evidence on the basis of the record compiled to date.

The government argues that an alternative ground of affirmance is that the administrative law judge expressed skepticism concerning the credibility of the plaintiff's testimony about his pain and numbness and resulting inability to work. But the administrative law judge did not base his decision on a credibility determination, and "*Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962). That is a rule of particular application to this case, for if the plaintiff's condition is as serious as Misra

found, and if as appears there is no serious disagreement between him and DeWitt, there is no basis for doubting that the plaintiff was credible.

Suppose a neurologist examined a patient and determined that he was a paraplegic as a result of his spine having been severed in an accident. And suppose the patient, seeking social security disability benefits, testified that he couldn't walk. It would be absurd for the administrative law judge to deny benefits because he thought the plaintiff a nervous, hesitant witness and was confident that the testimony of such a witness is never truthful. And more absurd for us to sustain the denial of benefits on the basis of that credibility determination.

We are particularly concerned about the *Chenery* violations committed by the government because it is a recurrent feature of the government's defense of denials of social security disability benefits, as this court has noted repeatedly. See, e.g., *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014); *Hughes v. Astrue*, 705 F.3d 276, 279 (7th Cir. 2013); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012); *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012); *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); *McCleskey v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). This is professional misconduct and if it continues we'll have to impose sanctions.

The judgment is reversed and the case remanded to the district court with instructions to remand to the Social Security Administration.