In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3264

LUKE E. HARDY,

*Plaintiff-Appellant,*

*v.*

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 16-cv-3116 — **Sue E. Myerscough**, *Judge.*

ARGUED OCTOBER 2, 2018 — DECIDED NOVEMBER 8, 2018

Before BAUER, KANNE, and SCUDDER, *Circuit Judges.*

PER CURIAM. Luke Hardy challenges the denial of his ap-
plication for Disability Insurance Benefits based on a degen-
erative back condition that required two surgeries. He chal-
lenges the administrative law judge's ("ALJ") residual func-
tional capacity ("RFC") determination on grounds that the
ALJ improperly discredited the opinion of his treating neuro-
surgeon. We agree that the ALJ failed to support her decision

to discount the treating neurosurgeon's opinion, and we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

Hardy, a 55-year old man who worked previously as a maintenance mechanic, has had two back surgeries, a discectomy in 2005 and a lumbar spinal fusion in 2006. His previous application for DIB benefits based on his back surgeries and pain was denied on April 25, 2012. Hardy then filed his current application for DIB benefits, claiming a disability onset date of April 26, 2012.

The first reports in the record of Hardy's medical condition begin in 2011, and they provide a helpful baseline. Dr. Virgil Dycoco, Hardy's primary-care physician, wrote then that Hardy was doing well using Tylenol and Valium to treat his chronic low back pain and degenerative arthritis. Dr. Jerry Bauer, a neurosurgeon, reported at a follow-up visit in November 2011 that Hardy had "persistent" pain in his left leg and took Tylenol #3 and Valium to help him sleep. Hardy's wound was "well healed," and he had "some tenderness" in his back but was "otherwise stable." Dr. Dycoco recounted in July 2012 that Hardy still had low back pain.

Dr. Vittal Chapa, a state-agency physician, noted in November 2012 based on an x-ray that Hardy had "mild degenerative changes" in his spine. Hardy otherwise, the doctor wrote, had a "full range of motion of the joints" but "limited" lumbosacral spine flexion. Dr. Chapa stated that Hardy could not squat and that he had severe difficulty walking on his toes and heels.

The agency initially denied Hardy's claim because Dr. Lenore Gonzalez, another state-agency doctor, reviewed

Hardy's medical records in January 2013, and opined that Hardy could perform sedentary work. Dr. Gonzalez determined that Hardy had postural limitations due to his back and leg problems, could lift up to 10 pounds occasionally, and could stand or walk for two hours during a workday. Dr. Gonzalez added that Hardy's history of back surgeries and his "minimal strength, atrophy, and hyporeflexia" in his left leg contributed to his symptoms.

Hardy told Dr. Dycoco that his back pain was "somewhat persistent" in February, so Dr. Dycoco renewed Hardy's medications. Dr. Dycoco also advised Hardy to follow up with Dr. Bauer, and Hardy did so in April. Dr. Bauer's notes of that appointment are unremarkable: Hardy was "[n]egative for back pain," walked without a limp, had "intact" strength, and straight leg raising "did not cause pain."

Upon reconsideration, the agency denied Hardy's claim. Dr. James Madison, another state-agency doctor, reviewed Hardy's file and determined that he had the same postural limitations recorded by Dr. Gonzalez, could frequently lift up to 10 pounds, and could stand or walk for six hours during a workday. Dr. Madison therefore opined that Hardy could perform light work and was not disabled.

In July 2013, Dr. Bauer wrote that Hardy could not return to his former work because Hardy could "at best, perform sedentary work with a maximum 10 pound lifting restriction and opportunity to change position and avoid prolonged sitting, standing or walking." He advised Hardy to consider a pain management program to deal with his complaints of "continued symptoms of pain in his back and radicular pain in his leg." Hardy also reported that he was using a cane to walk because his "legs give out and he tends to fall."

Dr. Bauer also noted that recent x-rays and MRIs of Hardy's spine showed a "solid fusion at L5-S1," but also that there "is no degenerative disc disease, disc herniation or stenosis at any other level." But consistent with Hardy's previous exams, Dr. Bauer noted that Hardy had intact balance and gait, normal reflexes, and no motor weakness, and the doctor concluded that "no further surgery is necessary."

Nearly a year later, in June 2014, Dr. Bauer saw Hardy walk into his office using a cane "to prevent him from falling," listened to Hardy's complaints of pain, and opined that Hardy was "unable to work." But Dr. Bauer went on to say that Hardy had intact balance and gait, intact coordination, and normal reflexes. He added that he thought "Hardy is stable at this time."

Dr. Dycoco echoed Dr. Bauer's conclusion that Hardy was "unable to work" when Hardy returned in July 2014. Dr. Dycoco reported Hardy's complaints of back pain with disc problems and renewed Hardy's prescriptions.

After a hearing on Hardy's claim, an ALJ applied the required five-step analysis for assessing disability, *see* 20 C.F.R. § 404.1520(a)(4), and concluded that Hardy was not disabled. The ALJ determined that Hardy had not engaged in substantial gainful employment since his alleged onset date (step one); that his conditions ("degenerative disc disease of the lumbar spine with history of remote surgeries and obesity") were severe impairments (step two); that these conditions did not equal a listed impairment (step three); that he had the residual functional capacity to perform light work, except that he could not climb ladders, ropes, or scaffolds and could occasionally climb ramps or stairs, balance, stoop, kneel, crouch,

and crawl (step four); and that he could work as a wire as-
sembler, assembly press operator, circuit board screener, or
finish assembler (step five).

In determining Hardy's RFC, the ALJ did not give control-
ling weight to the opinions of Dr. Bauer and Dr. Dycoco. The
ALJ agreed with Dr. Bauer that Hardy could not return to his
job as a maintenance mechanic, but Dr. Bauer's conclusion
that Hardy could perform sedentary work was "inconsistent
with the doctor's own treatment notes, which reflect essen-
tially normal physical exams 2013." (sic) And the ALJ gave Dr.
Dycoco's determination that Hardy was unable to work "very
little weight, as the opinion is unsupported by the doctor's
own treatment notes, which reflect very few objective find-
ings."

Hardy sought judicial review, arguing that the ALJ erred
in rejecting Dr. Bauer's opinion that Hardy was limited to sed-
entary work. A magistrate judge recommended that the dis-
trict court uphold the ALJ's determination, and particularly
the ALJ's decision to discount Dr. Bauer's opinion in light of
the doctor's findings that Hardy's balance, gait, and coordi-
nation were intact, Hardy's reflexes were normal, and
straight-leg-raising tests were negative. Hardy objected to the
magistrate judge's report, reiterating that the ALJ "impermis-
sibly rejected the opinions of [his] treating physician(s)."

The district judge adopted the report and recommenda-
tion because "the ALJ gave good reasons" for discounting the
opinions of Dr. Bauer and Dr. Dycoco. The judge explained
that "Dr. Bauer's opinion on [Hardy's] ability to work was
based primarily on [his] subjective complaints, as opposed to
objective medical evidence." And the ALJ permissibly dis-
counted Dr. Dycoco's opinion, the judge wrote, because the

"only objective finding on which [Dr. Dycoco's] assessment is based is that [Hardy] was experiencing a sore back." The judge also found no clear error in the magistrate judge's recommendation that substantial evidence supported the ALJ's decision that Hardy was not disabled and could perform light work.

## II. ANALYSIS

On appeal, Hardy argues that the ALJ should have given controlling weight to the opinions of his treating physicians, Dr. Bauer and Dr. Dycoco. A treating doctor's opinion generally is entitled to controlling weight if it is consistent with the record, and it cannot be rejected without a "sound explanation." *See* 20 C.F.R. § 404.1527(c)(2); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); *see also Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018) (noting that the treating-physician rule applies only to claims filed before March 27, 2017).

We agree with Hardy that the ALJ impermissibly discounted Dr. Bauer's opinion. The ALJ observed that Dr. Bauer's notes reflected "essentially normal physical exams," but it is not clear from her discussion what exams she is relying on to make that determination. Indeed, that one sentence she offered as support for her conclusion tells us very little: Dr. Bauer's findings that Hardy's "balance, gait, and coordination were intact" and Dr. Bauer's observations that Hardy walked without a limp, his motor skills and fine motor skills were normal, and his reflexes were normal. But it is not clear how these findings undermine Hardy's claim of disability in his *back*. The ALJ also did not engage Dr. Bauer's observations that Hardy showed up at his appointment dependent on a cane. An ALJ must grapple with lines of evidence that are contrary to her conclusion, and here the ALJ did not do so. *See*

*Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Further, we see no necessary inconsistency between Dr. Bauer's earlier assessments of Hardy and his later, *updated* assessment that Hardy could only perform sedentary work based on pain and his observations that Hardy walked with a cane. *See Lambert v. Berryhill*, 896 F.3d 768, 775 (7th Cir. 2018); *Scrogham v. Colvin*, 765 F.3d 685, 696–97 (7th Cir. 2014).

The ALJ compounded this error by failing to discuss other relevant medical evidence in the record and by neglecting to consider that Dr. Bauer's opinion was supported by the opinions of the state-agency physicians and Dr. Dycoco. An ALJ is required to consider findings that support a treating doctor's opinion; failure to do so is error. *See Lambert*, 896 F.3d at 775; *Gerstner*, 879 F.3d at 262–63 (7th Cir. 2018). And the ALJ erred here because she failed to *mention* the opinions of the state-agency physicians, despite her obligation to consider all the medical opinions in the record. *See* 20 C.F.R. § 404.1527(c); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). Yet Dr. Gonzalez—whose opinion appears to be consistent with Dr. Bauer's opinion—limited Hardy to sedentary work and observed that Hardy had minimal strength and atrophy in his leg. True, Dr. Madison later determined that Hardy could perform light work, but the ALJ did not specify that she was relying on his opinion. At argument the Commissioner invited us to infer from the ALJ's RFC finding that the ALJ considered Dr. Madison's opinion, but that argument violates the rule of *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194 (1947), because the ALJ's decision cannot be defended on a basis not articulated in her order. *See Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014).

The ALJ similarly failed to grapple with Dr. Dycoco's opinion. The ALJ cited only one appointment that Hardy had with Dr. Dycoco, despite Hardy's having seen the doctor both before and after he began using a cane. Therefore, just as the ALJ erred in analyzing Dr. Bauer's opinion, the ALJ again failed to address evidence that may have supported Dr. Dycoco's opinions. The government contends that Hardy waived any argument that the ALJ did not properly address Dr. Dycoco's opinions by not raising this issue below. Hardy's argument in the district court was presented thinly, but the district court addressed the weight given by the ALJ to Dr. Dycoco's opinion. By doing so, the court preserved this issue for appeal. *See Gerhartz v. Richert*, 779 F.3d 682, 686–87 (7th Cir. 2015); *Bailey v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Local 374*, 175 F.3d 526, 529–30 (7th Cir. 1999).

Hardy also asserts that substantial evidence does not support the ALJ's determination that he could perform light work. But given the ALJ's failure to address the opinions of Dr. Bauer and Dr. Dycoco, the ALJ's RFC determination necessarily is flawed. Had the ALJ properly evaluated those opinions, the RFC determination presumably would be different. On remand, the ALJ must grapple with the treating doctors' opinions, including the medical evidence in the record that supports the doctors' findings, and determine how, if at all, that evidence alters her assessment of Hardy's limitations.

### III. CONCLUSION

The judgment is VACATED and the case remanded to the district court with directions to remand the case to the Social Security Administration.