In the

# United States Court of Appeals
## For the Seventh Circuit

───────────────

No. 22-2808

HEATHER TUTWILER,

*Plaintiff-Appellant,*

*v.*

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

───────────────

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:21-cv-00291-WCL — **William C. Lee**, *Judge.*

───────────────

ARGUED SEPTEMBER 12, 2023 — DECIDED DECEMBER 7, 2023

───────────────

Before EASTERBROOK, HAMILTON, and PRYOR, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Alleging that numerous health problems prevented her from holding a job, plaintiff-appellant Heather Tutwiler applied under the Social Security Act for Disability Insurance Benefits and Supplemental Security Income. After an evidentiary hearing, an administrative law judge found that Tutwiler could not perform her prior jobs

but was still able to perform some forms of sedentary work, with some additional restrictions. The ALJ found that jobs within Tutwiler's abilities existed in the economy in such numbers that she was not disabled under the Social Security Act. On judicial review in the Northern District of Indiana, Judge Lee affirmed the denial of benefits. On appeal, we agree that the ALJ's decision was supported by substantial evidence and was not otherwise contrary to law. We affirm the judgment of the district court.

I.   *Factual and Procedural Background*

Heather Tutwiler was diagnosed with endometrial cancer in May 2014 at the age of 41. Radiation treatment caused her significant gastrointestinal problems, including frequent vomiting, nausea, and diarrhea. Her gastrointestinal symptoms persisted in the following years. She had her gallbladder removed, had surgery for a hernia reduction and repair, and experienced significant weight loss, depression, asthma, and nicotine dependence.

Tutwiler's gastrointestinal problems caused her significant issues in her housekeeping and laundry jobs. She frequently vomited at work or had to take time off due to other gastrointestinal symptoms. As her symptoms got progressively worse, her employers cut her hours from full-time to part-time and then to working only "as needed." Eventually, Tutwiler was fired from her last job.

In May 2019, Tutwiler applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433, and for Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. After the state agency denied Tutwiler's application initially and on

reconsideration, she requested a hearing before an ALJ. Tutwiler appeared at her hearing with counsel. A vocational expert also testified.

In October 2021, the ALJ concluded that Tutwiler was not disabled within the meaning of the Social Security Act. He applied the five-step test set forth in Social Security Administration regulations, 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Tutwiler had not engaged in substantial gainful employment since her onset date of January 1, 2018. At step two, the ALJ determined that Tutwiler's hernia surgeries, gastrointestinal symptoms, asthma, and depression constituted severe impairments that significantly limited her ability to perform basic work activities. The ALJ also noted that Tutwiler's history of endometrial cancer, as well as her marijuana, methamphetamine, and alcohol use disorders, were non-severe impairments—conditions that were abnormal but restricted only minimally her ability to work. At step three, the ALJ found that Tutwiler's impairments, alone or in combination, did not meet or equal the severity of any impairments listed in the Social Security regulations that lead to automatic findings of disability. At step four, the ALJ determined Tutwiler had the residual functional capacity to perform sedentary work with some additional restrictions: she could climb stairs or kneel or crouch only occasionally, and she could never climb ladders or ropes. The ALJ also found that Tutwiler needed to avoid concentrated exposure to extreme temperatures and that she could not perform fast-paced assembly-line work. Considering this residual functional capacity, as well as Tutwiler's age, education, and work experience, the ALJ found at step five that Tutwiler could work as an information clerk, table worker inspector,

sorter, document preparer, and address clerk. Because these jobs existed in significant numbers in the national economy, the ALJ determined that Tutwiler was not disabled for purposes of the Social Security Act. Tutwiler sought judicial review of the ALJ's decision. The district court affirmed, finding that the ALJ's decision was supported by substantial evidence. Tutwiler has appealed.

II.  *Standard of Review*

When reviewing a district court's decision on an ALJ's decision, we review the district court's decision de novo, but the law requires us to apply the same deferential standard of review to the ALJ's decision that the district court applies. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). We will reverse an ALJ's decision only if it is the result of an error of law or if it is unsupported by substantial evidence. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021); see also 42 U.S.C. §405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive …."); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

An ALJ must provide an adequate "logical bridge" connecting the evidence and her conclusions, but an ALJ's opinion need not specifically address every single piece of evidence. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010). We will reverse the ALJ's decision "only if the record compels a contrary result." *Gedatus*, 994 F.3d at 900.

III.  *Analysis*

Tutwiler focuses her challenge on the ALJ's residual functional capacity determination at step four of the analysis. She

argues on appeal that the ALJ failed to consider all her limitations in his analysis and that he "cherry-picked" the record for facts that were unfavorable to Tutwiler. But in the district court, Tutwiler set forth only one argument: that the ALJ failed to consider adequately how Tutwiler's gastrointestinal symptoms prevented her from working. Tutwiler has forfeited any argument unrelated to her gastrointestinal symptoms. As to the merits of that argument, we conclude that the ALJ's decision was supported by substantial evidence and is free from legal error.

### A. *Forfeiture*

Tutwiler argues that the ALJ should have considered her significant weight loss, her limited drug use, and her mental limitations when calculating her residual functional capacity. Tutwiler did not raise any of these issues in the district court. She contends, however, that she preserved these new arguments for appeal because she discussed broadly the ALJ's residual functional capacity determination in the district court and argued that the ALJ did not incorporate all her limitations—including these three—in his analysis.

The argument section of Tutwiler's district court brief, however, did not mention weight loss, drug use, or mental limitations. It discussed only the effects of her gastrointestinal issues on her ability to work. Tutwiler thus forfeited arguments resting on any other limitations by failing to discuss them in her district court brief. E.g., *United States v. Sheth*, 924 F.3d 425, 435 (7th Cir. 2019).

Tutwiler resists this conclusion, citing *Arnett v. Astrue*, 676 F.3d 586 (7th Cir. 2012), for the proposition that it is "sufficient" for an appellant to have raised "the ALJ's [residual

functional capacity] determination overall in the district court." *Id.* at 593. The quoted language must be considered within the context of that case. The *Arnett* claimant's district and appellate court arguments were not nearly as different as Tutwiler's. In the district court, the *Arnett* claimant had argued that the ALJ should have given greater consideration to her inability to sit or stand for a sustained time. On appeal, she shifted her argument slightly, arguing that "the ALJ failed to formulate [a residual functional capacity] that is sufficiently specific as to how often she must be able to sit and stand." *Id.* at 593. Although the *Arnett* claimant's argument changed slightly, her appellate brief still referred to the same factors that she had discussed in her district court brief. This context clarifies our holding in *Arnett* as standing for the proposition that a litigant sufficiently preserves an issue for appeal when the similarity between trial and appellate arguments resembles that of the *Arnett* claimant's. Cf. *Milhem v. Kijakazi*, 52 F.4th 688, 693 (7th Cir. 2022) (distinguishing *Arnett* and finding waiver where claimant argued for first time on appeal that Commissioner should be required to define by regulation how many jobs are "significant" for step-five calculation).

This case is very different, and Tutwiler asks us to adopt a standard that would be much more disruptive to orderly litigation. She invites this appellate court to reverse a district court's judgment based on matters never brought to the district court's attention. While the plain-error standard (applied more often in criminal cases) sometimes allows such reversals, it should not be freely extended to Social Security disability litigation. Tutwiler's district court brief did not mention the specific factors—her weight loss, drug use, or mental limitations—that she now highlights on appeal. She asserted only generally that the ALJ must consider all limiting effects in his

residual functional capacity determination. Her position would allow claimants to raise any issue relating to their residual functional capacity so long as they raised a single issue related to it in the district court. That approach would run contrary to the limited role of reviewing courts. It also would contradict this court's general practice of treating arguments raised in "a perfunctory or general manner" in the district court as forfeited on appeal. E.g., *Sheth*, 924 F.3d at 435; see also *Persinger v. Southwest Credit Systems, L.P.*, 20 F.4th 1184, 1195 n.5 (7th Cir. 2021) (applying same forfeiture standard in civil case). We decline to adopt a standard that would allow an appellant to present a case on appeal that the district court would no longer recognize.

B.  *Gastrointestinal Symptoms*

Tutwiler argues that the ALJ erred by "cherry-picking" the record for evidence that minimized the disabling effects of her gastrointestinal symptoms, by discounting her own testimony, and by ignoring other evidence in the record that supported her testimony. After reviewing the ALJ's decision and the evidentiary record underlying it, we conclude that the ALJ's credibility determination was not patently wrong and that Tutwiler did not identify any objective evidence that would compel a contrary result.

1.  *Credibility Determination*

The ALJ discounted Tutwiler's subjective reporting of her gastrointestinal symptoms, finding that multiple factors impaired Tutwiler's credibility. First, the ALJ reasoned that the intensity, persistence, and limiting effects of the symptoms that Tutwiler described in her testimony did not parallel her medical records, which showed that her symptoms were

sometimes debilitating but other times were not. Second, the ALJ thought that Tutwiler's inability to maintain full-time employment was likely due to reasons other than her impairments. Third, the ALJ found that Tutwiler's ability to care for herself at home—which included the ability to bathe herself, to care for a pet, and to do chores—stood in tension with her assertion that she could not work due to her symptoms. Finally, the ALJ recognized that the evidentiary record showed that Tutwiler had previously used marijuana and methamphetamine, even though she testified at her hearing that she had never used drugs.

Reviewing these factors, we conclude that the ALJ's credibility determination was not "patently wrong," as it would need to be for this court to reverse on that basis. E.g., *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Although the ALJ might have erred in his analysis of some factors, enough of them had adequate supporting evidence for this court to uphold his credibility determination. See *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (upholding ALJ's credibility determination despite disagreeing with some underlying reasons for that decision). For example, Tutwiler testified at her hearing that she had never used any illicit substances, but the evidentiary record plainly shows that she had used marijuana and methamphetamine before.[1] Also, despite Tutwiler's assertions at her hearing that her gastrointestinal symptoms

---

[1] We have noted before that a claimant might be afraid to admit to a government official that she committed a crime by using drugs. *McClesky v. Astrue*, 606 F.3d 351, 353 (7th Cir. 2010) (finding ALJ's analysis of credibility was inadequate). Nevertheless, as *McClesky* recognized, an ALJ is still entitled to weigh such lies or errors in testimony in weighing overall credibility. *Id*.

were constant and untreatable, Tutwiler had herself reported some improvement in prior years. Because the ALJ made his credibility determination based on the totality of these factors and enough of them withstand scrutiny to support his decision, his determination does not amount to a reversible error.

### 2. *Objective Medical Evidence*

Tutwiler also contends that the ALJ ignored objective medical evidence that tended to prove she was disabled. She argues that medical records from 2014 through 2020 show that her gastrointestinal symptoms were persistent and debilitating. She also argues that those symptoms would have caused her to miss more than one day of work per month and to be "off-task" for more than ten percent of a workday. According to the vocational expert, either of those effects would have caused Tutwiler to lose almost any job she might have found.

But the evidentiary record does not uniformly support Tutwiler's assertions. Evidence indicates that her symptoms were abating toward the end of her claimed disability period. Notes from two of Tutwiler's 2020 doctor appointments report that she was not experiencing gastrointestinal symptoms at those times. Another note from October 2019 reported that Tutwiler's diarrhea had "improved" since she started taking medication. Taken as a whole, the medical evidence presented an ambiguous picture as to the severity and persistence of Tutwiler's symptoms. The ALJ considered some evidence that could have supported a more restrictive residual functional capacity than the ALJ found here, but other substantial evidence supports the ALJ's decision.

Reasonable minds could disagree with the ALJ's appraisal of this conflicting evidence. Yet judicial review is not designed for appellate judges looking at a transcript to re-weigh conflicting evidence. Instead we ask whether the ALJ's decision "reflects an adequate logical bridge from the evidence to the conclusions." *Gedatus*, 994 F.3d at 900. The ALJ's decision met this standard. He weighed the competing evidence, assessed testimony from Tutwiler and the vocational expert, and considered the opinions of treating physicians and other physicians who had examined Tutwiler. The ALJ's careful consideration is shown by the fact that he departed from the residual functional capacity recommended by the state agency physicians who evaluated Tutwiler. They found that she could perform work at the light exertional level (with some additional restrictions). The ALJ found that Tutwiler could perform no more than sedentary work (with those additional restrictions) based on his independent review of the full evidentiary record.

Also, Tutwiler did not provide any opinion from a doctor who would have imposed greater restrictions than those the ALJ found in his decision. See *Gedatus*, 994 F.3d at 904. The lack of an opposing medical opinion makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal. Doing so would essentially put ourselves in the ALJ's shoes to re-weigh the evidence, a role that we try to avoid.

In sum, the ALJ supported his opinion with substantial evidence, and Tutwiler has not identified anything in the record that compels a contrary result. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). The judgment of the district court is AFFIRMED.